ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                   )
UNITED STATES SUGAR                )
CORPORATION,                       )
                                   )
           Petitioners,            )
                                   )
      v.                           )    Docket No. 11-1108
                                   )    (and consolidated cases)
UNITED STATES ENVIRONMENTAL        )
PROTECTION AGENCY, et al.,         )
                                   )
           Respondents.            )
_____)

**EPA'S MOTION FOR REMAND OF THE RECORD,
FOR PARTIAL VOLUNTARY REMAND WITHOUT VACATUR,
AND FOR REVISION OF THE BRIEFING SCHEDULE**

Pursuant to Circuit Rule 41(b), Respondents United States Environmental Protection Agency, et al., (collectively "EPA") hereby move (1) for a remand of the record to EPA for 60 days so that EPA can supplement the record in light of this Court's decision in *National Association of Clean Water Agencies v. EPA*, 734 F.3d 1115 (D.C. Cir. 2013) ("*NACWA*"), in order to provide further explanation of the analysis of variability used in setting the numeric standards; and (2) for voluntary remand without vacatur of the specific numeric standards identified below so that EPA can review the appropriateness of applying that variability

analysis to limited data sets in light of the *NACWA* decision.[1] The undersigned counsel has contacted counsel for the other parties. Petitioners Sierra Club, et. al., have represented that they oppose this motion and intend to file a response. Petitioners United States Sugar Corporation, American Forest & Paper Association, et al., Coalition for Responsible Waste Management, Council of Industrial Boiler Owners, American Municipal Power, Inc., JELD-WEN, Inc. and Intervenor Auto Industry Forum have represented that they take no position at this time and reserve the right to file a response. No response was received from the remaining parties.

## BACKGROUND

The consolidated petitions in this action seek review of two EPA rulemakings, "National Emission Standards for Hazardous Air Pollutants for Major Sources: Industrial, Commercial, and Institutional Boilers and Process Heaters," 76 Fed. Reg. 15,608 (March 21, 2011) ("Major Boiler MACT Rule"), and EPA's action on reconsideration of certain issues from the Major Boiler MACT Rule, 78 Fed. Reg. 7138 (January 31, 2013) ("Reconsideration Rule"). These rules set standards pursuant to section 112 of the Clean Air Act, 42 U.S.C. § 7412, for industrial, commercial and institutional boilers and process heaters that are major sources of hazardous air pollutants. Pursuant to section 7412, EPA sets standards

---

[1] EPA is also filing today a motion to suspend briefing in this case pending resolution of this motion for partial remand and remand of the record.

2

based on the Maximum Achievable Control Technology ("MACT"). The statute requires that for existing sources the standard may be no less stringent than the average emission limitation achieved by the best performing 12 percent of the existing sources, or the best performing 5 sources if there are fewer than 30 sources in the category. 42 U.S.C. § 7412(3). For new sources, the standard may be no less stringent than the emission control that is achieved in practice by the best controlled similar source. *Id.*

The Court has ordered that this case be heard by the same panel as *American Forest & Paper Ass'n v. EPA*, No. 11-1125 and consolidated cases (involving emission standards for certain types of incinerators); *American Chemistry Council v. EPA*, No. 11-1141 and consolidated cases (involving emission standards for area source boilers); and *Solvay USA, Inc. v. EPA*, No. 11-1189 and consolidated cases (involving a related rule under the Resource Conservation and Recovery Act ("RCRA") entitled "Identification of Non-Hazardous Secondary Materials That Are Solid Waste" that helps define which facilities are subject to Clean Air Act regulation as "boilers" or "incinerators"). ECF No. 1461576.

In this motion, EPA is seeking remand of the record of the Major Source Boiler Rule and Reconsideration Rule and is also seeking a voluntary remand without vacatur of specified standards. While a number of Petitioners' issues are independent of the issues to be addressed in the remand of the record, EPA

believes it would best serve judicial economy to stay all briefing in the case pending completion of the remand of the record and then proceed to brief all remaining issues (*i.e.*, all issues other than those specified issues for which a voluntary remand without vacatur is being sought) after the remand of the record period is complete.

     EPA is also filing today a motion in No. 11-1125 (the incinerator case) seeking the same two-part relief as in this case (*i.e.,* remand of the record combined with partial voluntary remand without vacatur).  Also today EPA is filing a motion in No. 11-1141 (the area source boiler case) seeking voluntary remand without vacatur of all of the numeric MACT standards at issue in that case.[2]  (EPA is also filing in each of those cases a motion to suspend briefing pending resolution of the remand motions.)  EPA is not filing any such motion in No. 11-1189 (the RCRA non-hazardous solid materials case), and believes that briefing can proceed in that case in accordance with the established schedule.

---

[2] Because EPA is seeking voluntary remand without vacatur of all the MACT standards at issue in No. 11-1141, rather than only some of the MACT standards as in Nos. 11-1108 and 11-1125, if that motion is granted, there is no need for a remand of the record in No. 11-1141.

# ARGUMENT

## I. THE REQUEST FOR REMAND OF THE RECORD FOR FURTHER EXPLANATION OF LIMITED ISSUES SHOULD BE GRANTED

EPA seeks a remand of the record for these rules in order to provide further explanation of the analysis of variability used in setting the numeric MACT standards in light of this Court's opinion in *NACWA*. In *NACWA*, the Court reviewed an EPA regulation establishing, pursuant to 42 U.S.C. § 7429, MACT emission standards for sewage sludge incinerators ("SSI Rule"). In its opinion, the Court upheld substantial portions of the rule, but remanded (without vacatur) certain issues to EPA for further explanation. Of particular relevance here was the Court's remand of the Agency's methodology for accounting for variability, including the use of a statistical methodology referred to as the Upper Prediction Limit ("UPL"), in setting numeric MACT standards for the incinerators at issue in *NACWA*. 734 F.3d at 1151.

The variability analysis used in establishing the numeric MACT standards for major source boilers also used the UPL methodology at issue in *NACWA*.[3] Environmental Petitioners have stated that they intend to challenge those standards in light of the decision in *NACWA*. ECF No. 1467922 at 4. In light of the

---

[3] Although the SSI rule was issued under section 7429 and the Major Source Boiler Rule was issued under section 7412, as the Court held in *NACWA*, "the statutory directive on setting MACT standards is virtually identical" under the two sections. 734 F.3d at 1119. *Compare* 42 U.S.C. §§ 7412(d)(3) and 7429 (a)(2).

5

concerns raised by the Court in *NACWA*, EPA believes that it would facilitate judicial review for EPA to do in this case exactly what the Court directed in *NACWA*; *i.e.*, to provide a further explanation of the variability used in establishing the numeric MACT standards prior to the commencement of briefing in this case. Since the *NACWA* decision post-dated the promulgation of the Major Boiler MACT Rule and Reconsideration Rule at issue here, EPA could not have anticipated the need to provide this additional explanation at the time of the rulemaking. Accordingly, EPA requests that the Court remand the record to EPA for 60 days to provide a further explanation of the variability analysis. At the end of that period, EPA will supplement the administrative record with that further explanation. EPA does not intend to make any other changes to the record or the standards as a result of the remand of the record.

Remand of the record is authorized by the Court's rules, *see* D.C. Cir. R. 41(b), and utilization of this procedure is especially appropriate in this case. As noted above, the EPA actions challenged here were promulgated in March 2011 and January 2013, both well before issuance of the *NACWA* decision in August 2013. Therefore, at the time EPA issued the decisions at issue in this case, it could not have been expected to address the issues raised by the Court in *NACWA* concerning the UPL methodology. By remanding the record to EPA, the Court

6

will be providing the Agency with the opportunity to address these issues, providing a more complete record for judicial review.

This requested relief is consistent with the Court's actions in *NACWA*, where the Court determined that EPA had not provided sufficient explanation of its variability analysis, and of its use of the UPL, in the SSI Rule, which in turn made it difficult for the Court to determine whether the resulting standards were consistent with Clean Air Act requirements. 734 F.3d at 1142-44. The Court, accordingly, remanded the rule to EPA for further explanation. *Id.* at 1151. The Major Source Boiler MACT Rule was promulgated the same day as the SSI Rule, and also uses the UPL as part of the variability analysis. The Reconsideration Rule also utilizes the UPL. Furthermore, the Agency's explanation of its use of the UPL in the variability analysis is analogous to that in the SSI Rule at issue in *NACWA*. Rather than litigating the issue of the validity of the variability analysis on the basis of an explanation the Court has already found requires supplementation, it would be more efficient to give the Agency the opportunity to provide the further explanation the Court found was lacking in *NACWA*. Accordingly, EPA seeks a remand of the record for 60 days to so supplement the record.

EPA emphasizes that it is not seeking a remand of the record because it failed to consider "an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 43 (1983), or because it committed a

procedural error that affects the validity of the outcome. The Agency seeks a remand of the record only for the purpose of supplementing the basis for its decision, and does so only in light of *NACWA*, a decision of this Court issued subsequent to promulgation of the rules at issue here. *See A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995) (remanding to allow FDA to provide more adequate justification for its conclusion). The relief sought here is directly analogous to what the court ordered in *NACWA*.

## II.   BRIEFING SHOULD BE STAYED PENDING COMPLETION OF THE REMAND OF THE RECORD

Under this Court's rules, the Court retains jurisdiction over this matter during the pendency of a remand of the record. D.C. Cir. R. 41(b). EPA further submits that it would be appropriate for the Court to stay proceedings in this case during the remand period. Given the short stay requested for the remand of the record, it would not serve judicial efficiency to have multiple rounds of briefing. Rather, after the remand of the record is complete, a single round of briefing should proceed, in accordance with the time intervals in the briefing schedule established by the Court's Order of January, 31, 2014 (ECF No. 1477836), to address all remaining issues in the case. In order to give Petitioners time to address EPA's further explanation in their opening briefs, EPA believes that it would be appropriate for Petitioners' briefs to be due 30 days after the end of the

8

remand of the record period. Further briefing could then proceed in accordance with the time intervals and word limits in the scheduling order.

### III. THE REQUEST FOR PARTIAL REMAND WITHOUT VACATUR SHOULD BE GRANTED

In *NACWA*, the Court specifically instructed EPA to "explain on remand why the upper prediction limit is a reasonable estimate of what an incinerator would achieve under the worst foreseeable conditions for incinerators with smaller data sets." 734 F.3d at 1144. The Court further noted that in at least one case in the SSI Rule, application of the UPL methodology would have resulted in establishing a standard for new sources that was less stringent than that for existing sources. *Id.* at 1155-56. (EPA addressed that anomalous result by setting the new source standard equal to the existing source standard. *Id.* at 1156.)

While EPA believes that it can adequately explain why the Agency's use of the UPL in general is consistent with Clean Air Act requirements through a remand of the record for a limited time, the question of whether the UPL is an appropriate statistical method for small data sets requires more analysis. Thus, the Agency is seeking a voluntary remand without vacatur of those specific numeric MACT limits that were established on the basis of a small data set. In establishing MACT standards in the rules that are the subject of these coordinated cases, *i.e.*, Nos. 11-1108 (major source boilers), 11-1125 (incinerators), and 11-1141 (area source boilers), this statistical anomaly (*i.e.*, where the UPL methodology resulted in the

9

calculation of a new source MACT standard less stringent than the MACT standard for existing sources) did not occur in data sets with more than 9 data points. Accordingly, EPA is seeking a voluntary remand without vacatur of the numeric MACT limits that were established on the basis of 9 or fewer data points.

Specifically, for the Major Source Boiler Rule. EPA is seeking remand of the following standards:

### A.　Standards for New Sources in 40 C.F.R. Part 63 Subpart DDDDD Table 1 (78 Fed. Reg. at 7193-95)

1.a - Hydrogen Chloride ("HCl") standard for units in all subcategories designed to burn solid fuel;

2.a - Filterable Particulate Matter ("PM") and alternative Total Selected Metals ("TSM") standard for units designed to burn coal/solid fossil fuel;

6.a – Carbon Monoxide ("CO") standard (but not the alternative CO Continuous Emission Monitoring System ("CEMS") standard) for fluidized bed units with an integrated heat exchanger designed to burn coal/solid fossil fuel;

7.b – TSM (but not the filterable PM standard) for stokers/sloped grate/others designed to burn wet biomass fuel;

8.a – CO standard for stokers/sloped grate/others designed to burn kiln-dried biomass fuel;

8.b – Filterable PM and alternative TSM standard for stokers/sloped grate/others designed to burn kiln-dried biomass fuel;

9.a – CO standard (but not the alternative CEMS standard) for fluidized bed units designed to burn biomass/bio-based solids;

9.b – Filterable PM and alternative TSM standard for fluidized bed units designed to burn biomass/bio-based solids;

10.b – Filterable PM and alternative TSM standard for suspension burners designed to burn biomass/bio-based solids;

11.a – CO standard (but not the alternative CEMS standard) for Dutch Ovens/Pile burners designed to burn biomass/bio-based solids;

11.b – Filterable PM and alternative TSM standard for Dutch Ovens/Pile burners designed to burn biomass/bio-based solids;

12.b – Filterable PM and alternative TSM standard for fuel cell units designed to burn biomass/bio-based solids;

14.a – HCl standard for units designed to burn liquid fuel;

14.b—Mercury standard for units designed to burn liquid fuel;

15.b – Filterable PM and alternative TSM standard for units designed to burn heavy liquid fuel;

16.b – Filterable PM and alternative TSM standard for units designed to burn light liquid fuel;

17.b – Filterable PM and alternative TSM standard for units designed to burn liquid fuel that are non-continental units;

18.a-- CO standard for units designed to burn gas 2 (other) gases;

18.b-- HCl standard for units designed to burn gas 2 (other) gases;

18.c-- Mercury standard for units designed to burn gas 2 (other) gases;

18.d-- Filterable PM and alternative TSM standard for units designed to burn gas 2 (other) gases.

### B.   Standards for Existing Sources in 40 C.F.R. Part 63 Subpart DDDDD Table 2 (78 Fed. Reg. at 7195-98)

6.a – CO standard (but not the alternative CEMS standard) for fluidized bed units with an integrated heat exchanger designed to burn coal/solid fossil fuel;

8.a – CO standard for stokers/sloped grate/others designed to burn kiln-dried biomass fuel;

8.b – Filterable PM and alternative TSM standard for stokers/sloped grate/others designed to burn kiln-dried biomass fuel;

10.b – Filterable PM and alternative TSM standard for suspension burners designed to burn biomass/bio-based solids;

17.b – TSM standard (but not the Filterable PM standard) for units designed to burn liquid fuel that are non-continental units;

18.a-- CO standard for units designed to burn gas 2 (other) gases;

18.b-- HCl standard for units designed to burn gas 2 (other) gases;

18.c-- Mercury standard for units designed to burn gas 2 (other) gases;

12

18.d-- Filterable PM and alternative TSM standard for units designed to burn gas 2 (other) gases.

Voluntary remand is supported by the case law where, as here, the agency has determined that its prior action requires reconsideration for substantive or procedural reasons. *See, e.g.*, *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant such motions [for remand], preferring to allow agencies to cure their own mistakes rather than waste the courts' and parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete."). *See also California Communities Against Toxics v. EPA,* 688 F.3d 989, 992 (9th Cir. 2012) ("Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith.").

During the remand period, EPA will review its methodology for calculating the remanded standards and expects to conduct additional notice and comment rulemaking to do so. Remand will therefore serve the interests of judicial economy because the issues concerning those standards may become moot or may be significantly narrowed upon remand.

Remand without vacatur is the most appropriate procedural mechanism that will allow EPA to complete this process, and is the remedy the Court ordered in *NACWA*. EPA is seeking a remand of these standards to address the claim by Environmental Petitioners that EPA's statistical methodology has resulted in

13

standards that are insufficiently stringent.  Vacatur of these standards would result in no standards being in place for these particular source categories.  The Court has previously recognized the value of leaving standards in place when vacatur would eliminate the environmental benefits accruing from the standards.  *See North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (noting that remand without vacatur may "at least temporarily preserve the environmental values" that may have been achieved by a remanded rule); *Environmental Defense Fund v. Administrator*, 898 F.2d 183, 190 (D.C. Cir. 1990) (remand appropriate where vacatur would "at least temporarily defeat petitioner's purpose, the enhanced protection of the environmental values covered by the PSD provisions").

## CONCLUSION

EPA's motion for remand without vacatur of the identified standards and to remand the record for 60 days should be granted.  EPA further requests that the Court revise the existing briefing schedule to require Petitioners' briefs to be due 30 days after the end of the remand of the record and to require the remaining briefs be due at the same intervals provided in the existing briefing schedule.

        Respectfully submitted,

        ROBERT G. DREHER
        Acting Assistant Attorney General

|  |  |
|---|---|
|  | /S/  Norman L. Rave, Jr. |
|  | NORMAN L. RAVE, JR. |
|  | PERRY ROSEN |
|  | Environmental Defense Section |
|  | Environment & Natural Resources Division |
|  | United States Department of Justice |
|  | P.O. Box 7611 |
|  | Washington, D.C. 20044 |
|  | (202) 616-7568 |
| February 28, 2014 | Counsel for Respondents |

## CERTIFICATE OF SERVICE

  I hereby certify that on this 28th day of February, 2014, I caused a copy of the foregoing document to be served by the Court's CM/ECF system on all counsel of record in this matter.

               <u>/S/ Norman L. Rave, Jr.</u>
               Norman L. Rave, Jr.