<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

|  |  |
|---|---|
| **UNITED STATES SUGAR CORPORATION, et al.,** ) ) ) ) | |
| Petitioners, ) ) | |
| v. ) ) | **Docket No. 11-1108 (and consolidated cases)** |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,** ) ) ) ) | |
| Respondents. ) ) | |

**OPPOSITION TO REMEDY REQUESTED IN EPA'S TWO MOTIONS ADDRESSING INADEQUACIES WITH EPA'S RULEMAKING METHODOLOGY AND MOTION FOR AFFIRMATIVE RELIEF[1]**

Petitioners American Forest & Paper Association, American Wood Council, Biomass Power Association, National Association of Manufacturers, National Oilseed Processors Association, Rubber Manufacturers Association, Southeastern Lumber Manufacturers Association, United States Sugar Corporation, and American Chemistry Council (collectively, "Petitioners") hereby respond to two coordinated motions filed by Respondent U.S. Environmental Protection Agency ("EPA" or "Agency"). In the first motion, EPA's Motion for Remand of the

---

[1] Petitioners note that this response to EPA's motions includes a motion for affirmative relief pursuant to Fed. R. App. P. 27(a)(3)(B).

Record, for Partial Voluntary Remand Without Vacatur, and for Revision of the Briefing Schedule (Doc. 1482091) (hereinafter "Remand Motion"), EPA requests that the Court (1) remand the record of the Major Source Boiler Rules for 60 days so that EPA can provide further justification for its general use of the Upper Prediction Limit ("UPL") methodology in assessing maximum achievable control technology ("MACT") standard variability; (2) remand without vacatur a series of both new and existing source MACT standards developed using nine or fewer data points under the UPL methodology (hereinafter "UPL Standards"); and (3) stay briefing of all issues in case No. 11-1108 until 90 days after the Court grants the Remand Motion. In a second motion filed the same day (Doc. 1482095) (hereinafter "Briefing Suspension Motion"), EPA moves to suspend the current briefing schedule established by this Court's January 31, 2014 order (Doc. 1477836) pending this Court's ruling on the Remand Motion.

As this Court is aware, case No. 11-1108 is related to three other cases (case Nos. 11-1125, 11-1141, and 11-1189).[2] At EPA's request, the Court ordered that the four cases would be heard by the same panel. Order at 2 (Oct. 16, 2013) (Doc. 1461576) (granting Doc. 1445600). On the same day that EPA filed the Remand

---

[2] Until January 31, 2014, the non-hazardous secondary materials rules ("NHSM Rules") litigation was consolidated under lead case No. 11-1148. After the Court granted petitioners' voluntary dismissal of case Nos. 11-1148 and 13-1167, however, lead case No. 11-1189 was assigned to the NHSM Rules litigation. Order (Jan. 31, 2014) (Doc. 1477808).

2

Motion and Briefing Suspension Motion in this case, EPA filed procedural motions in two of the three cases related to case No. 11-1108.  In case No. 11-1125, the litigation concerning Clean Air Act ("CAA") § 129 standards for commercial and industrial solid waste incinerator units ("CISWI Rules"), EPA filed a remand motion and briefing suspension motion identical in scope to the motions filed in case No. 11-1108.

In case No. 11-1141, the litigation concerning CAA § 112 emission standards for area source boilers ("Area Source Boiler Rules"), EPA filed a motion requesting remand of *all* MACT standards because they were all developed using the UPL methodology with nine or fewer data points.[3]  In the motion, EPA further requested that briefing proceed on remaining issues 30 days after the Court's action on the remand motion (on the schedule established by the January 31, 2014 briefing order) or April 11, 2014, whichever is later.  EPA also filed a briefing suspension motion identical to those filed in case Nos. 11-1108 and 11-1125.  EPA requests no action in case No. 11-1189, the NHSM Rules litigation.

Petitioners are filing coordinated responses in opposition to the remedy requested by EPA's three sets of motions (and accompanying motions for affirmative relief) in case Nos. 11-1108, 11-1125, and 11-1141.

---

[3] EPA asserts that because it "is seeking voluntary remand without vacatur of all the MACT standards" in the Area Source Boiler Rules, "if that motion is granted, there is no need for a remand of the record in No. 11-1141." Remand Motion at 4 n.2.

3

## SUMMARY OF ARGUMENT

As explained herein, in light of this Court's decision in *National Association of Clean Water Agencies v. EPA*, 734 F.3d 1115 (D.C. Cir. 2013) ("*NACWA*"), Petitioners do not oppose EPA's request for an opportunity to review specified UPL Standards. *See* Remand Motion at 10-13 (listing UPL standards). But, if EPA's request to <u>remand</u> the UPL Standards were granted by the Court, those methodologically flawed standards would inequitably remain in effect while EPA undertakes further rulemaking on them. Thus, Petitioners oppose the motion to remand the UPL Standards and request instead that the specified standards be <u>severed</u> from this litigation and <u>vacated</u>.

Similarly, Petitioners do not oppose EPA's request to supplement the record to better explain the basis for and legal underpinnings of the UPL methodology ("UPL Record Issues"). But, if briefing is suspended, as EPA requests, for the period necessary to supplement the record, Petitioners would face heightened economic hardship and regulatory uncertainty because resolution of <u>all</u> issues in dispute in this case would be delayed pending EPA's action to supplement the record as to only the limited UPL issues. Thus, Petitioners oppose EPA's motion to stay the briefing schedule and, instead, request that the UPL Record Issues be severed from the pending case with instructions for EPA to address them in the

rulemaking that EPA intends to initiate to address the UPL Standards.  For similar reasons, Petitioners oppose EPA's Briefing Suspension Motion.

## ARGUMENT

### I. Petitioners Do Not Oppose EPA's Request to Reassess Certain UPL Record Issues and the UPL Standards.

As EPA explains in its Remand Motion, this Court remanded last year a rule establishing MACT emission standards for sewage sludge incinerators under § 129 of the Clean Air Act because of the Court's concern with EPA's UPL methodology.  *NACWA*, 734 F.3d at 1151.  The Major Source Boiler Rules also used the UPL methodology in MACT standard-setting.  As EPA explains, even though the Rules were issued under § 112 of the Clean Air Act rather than § 129, MACT standard-setting is essentially the same under both sections.  Remand Motion at 5 n.3.

In light of *NACWA*, EPA requests the opportunity to reassess the UPL Standards to make sure that the Agency uses a suitable standard-setting method for subcategories with nine or fewer data points.  EPA also requests the opportunity to supplement the record to better address the UPL Record Issues.  Petitioners do not oppose these aspects of the Remand Motion.

## II. The UPL Standards Must Be Severed from Case No. 11-1108 and Vacated.

While Petitioners do not oppose EPA's request for the opportunity to reassess standards based on nine or fewer data points, Petitioners staunchly oppose EPA's inequitable request that those standards remain in effect during the pendency of the rulemaking needed to accomplish the reassessment. By asking for a voluntary remand, EPA is effectively conceding that the methodology used to calculate the UPL Standards is flawed. *See* Remand Motion at 9-10 (admitting "statistical anomaly" whereby "the UPL methodology resulted in the calculation of a new source MACT standard less stringent than the MACT standard for existing sources"), 13 (indicating that EPA "expects to conduct additional notice and comment rulemaking" to deal with methodological issues).

Remand of the UPL Standards *without* vacatur – the relief requested by EPA – would require Petitioners to comply with standards that, by EPA's own admission, were calculated in a legally indefensible manner while EPA undertakes additional rulemaking of indeterminate duration and outcome. Petitioners would be forced to plan for compliance with and, depending on how long the rulemaking takes, perhaps even implement the emissions control measures needed to comply with the UPL Standards. If the UPL Standards were to change significantly through the further rulemaking, the inequity would be compounded, because affected sources would be subject to the current standards in the short term and a

wholly different set of standards in the long term. Such bifurcated standard-setting is wholly inconsistent with the regulatory scheme set out in CAA § 112(d).

The D.C. Circuit has a well-established framework for evaluating whether an inadequately supported rule warrants vacatur or remand. Application of that framework to the facts of this case supports vacatur. The Court is to consider (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and (2) "the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (quoting *Int'l Union, UMW v. FMSHA*, 920 F.2d 960, 967 (D.C. Cir. 1990)) (internal quotation marks omitted). In short, the Court must consider and weigh the equities of vacatur relative to remand.

With regard to the first *Allied-Signal* factor, it is near certain that the Agency's methodology for developing the UPL Standards is flawed. EPA does not assert that it can simply add more explanation to justify use of the UPL methodology to calculate standards based on small datasets. *Cf. Allied-Signal*, 988 F.2d at 151 (finding it "conceivable" that rule might not change because vague statements by agency could be further supported on remand). Instead, EPA's careful parsing in its Remand Motion between those standards that are based on greater than nine data points and those that are not demonstrates that EPA has

7

already evaluated its methodology and identified a break point between data sets where application of its UPL methodology is appropriate and those where it is not. Remand Motion at 9-10.[4]  This "serious" methodological flaw therefore warrants vacatur of the UPL Standards.  *See EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 37 (D.C. Cir. 2012) (vacatur appropriate where there is "no doubt" that the Agency acted incorrectly).

With regard to the second *Allied-Signal* factor, the "delay and trouble [remand] would cause are severe" for regulated entities relative to vacatur.  *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 993 (9th Cir. 2012).  If the UPL Standards are remanded, regulated entities will be forced to plow ahead in developing compliance strategies and implementing capital projects that may all be for naught if standards finalized after remand rulemaking differ from the methodologically flawed standards.  By contrast, vacatur would prevent significant and irreparable wastefulness and unfair imposition of requirements that are subject to change through further rulemaking.

Consistent with application of the *Allied-Signal* factors to this case, the Court should sever the UPL Standards from case No. 11-1108 and vacate them.

---

[4] Petitioners note that EPA has similarly requested remand of the new source MACT limits for electric utility steam generating units, all based on small datasets using the UPL methodology.  *See* EPA's Unopposed Motion for Partial Voluntary Remand, case No. 13-1200 (Doc. 1482442).  In that motion, EPA also represents that it "expects to conduct additional notice and comment rulemaking" to address the problem.  *Id.* at 5.

### III. Petitioners Oppose EPA's Request to Hold the Litigation in Abeyance Pending EPA's Action on the UPL Record Issues.

While Petitioners do not oppose EPA's request to supplement the record to provide additional support for the UPL Record Issues, Petitioners oppose EPA's request to stay briefing while EPA undertakes this effort. *See* Remand Motion at 8.

As noted above, petitioners in this litigation intend to brief a large number of issues that in no way depend on, or relate to, EPA's UPL methodology. Petitioners have consistently emphasized the need for expeditious briefing and decision on the issues presented by this case (and related case Nos. 11-1125, 11-1141, and 11-1189).[5] Existing sources face a looming January 31, 2016 deadline for compliance with the Major Source Boiler Rules (the subject of this consolidated litigation). 78 Fed. Reg. 7138, 7143 (Jan. 13, 2013). For new sources, the deadline is January 31, 2013, or upon startup, whichever is later. *Id.* The outcome of this litigation could bear significantly on which actions must be taken by affected parties to comply with the Major Source Boiler Rules by the applicable compliance deadlines.

Continued delay in resolving outstanding issues exacerbates existing uncertainty and results in additional and otherwise avoidable costs and complexity for affected parties. Given the proximity of the existing source compliance

---

[5] *See, e.g.,* Response of Petitioners American Forest & Paper Association, et al., to Respondent U.S. Environmental Protection Agency's Motion to Have Cases Heard by the Same Panel at 3-4, case No. 11-1108 (Doc. 1447406).

deadline, affected parties have already begun to take action to ensure they will meet the standards by the deadline, thereby raising still higher the already significant economic stakes for Petitioners in ensuring that this litigation be resolved without undue delay. Swift and timely resolution of at least all non-UPL issues would reduce regulatory uncertainty and, thus, enable better compliance planning and minimize economic waste.

Stay of briefing while EPA conducts a "remand of the record" at this point in time would inject unreasonable delay into the resolution of all issues presented in this litigation – delay that EPA could have easily avoided. While time is, and always has been, of the essence for Petitioners, EPA apparently has felt no sense of urgency to address UPL issues. What EPA fails to explain in either the Remand Motion or the Briefing Suspension Motion is that the *NACWA* decision was issued by this Court almost <u>seven months ago</u>, on August 20, 2013. So, while true that EPA did not know of the decision when it finalized the Major Source Boiler MACT standards, it has known about the decision for *months* before filing its motions. Petitioners should not be the victim of EPA's delay.

In the time since the *NACWA* decision, EPA could have shored up the record for a 60-day period *three* times over (and, potentially, even conducted an expedited

rulemaking to address standards that it believes may not pass muster under
*NACWA*). But EPA inexplicably took no action to respond to the decision.[6]

At a minimum, when EPA and the other parties to this litigation filed a joint briefing proposal in this case in November 2013 (more than *three* months after the decision), *see* Doc. 1467922, EPA knew, or should have known, whether further administrative action would be necessary to deal with UPL issues. EPA's failure to raise these issues and propose a suitable briefing schedule and format at that time is inexplicable.

While EPA asserts that briefing should be stayed during the "remand of the record" period because "it would not serve judicial efficiency to have multiple rounds of briefing," Remand Motion at 8, EPA has already requested that there be multiple rounds of briefing with regard to the Major Source Boiler Rules. In August 2013, EPA asked the Court to sever certain reconsideration issues to allow the Agency to conduct further proceedings on those issues and provide for a separate opportunity for challenge in court. Motion to Govern Further Proceedings (Aug. 6, 2013) (Doc. 1450281); *see also* Reply in Further Support of EPA's

---

[6] Shortly after the decision was issued, Alaska Oil & Gas Association, et al., petitioners in the related CISWI Rules litigation, consolidated under lead case No. 11-1125, filed a 28(j) letter with the Court on August 28, 2013 to bring the *NACWA* decision to EPA's attention for its potential relevance to the small, remote incinerator standards. Doc. 1453907. In a September 9, 2013 response, EPA indicated that it "is not currently engaged in any administrative reconsideration process to address AOGA's issue and that its issue is ripe for review." Doc. No. 1455446.

Motion to Govern Further Proceedings at 5 (Aug. 26, 2013) (Doc. 1453611) ("EPA has specifically identified those issues it wishes to hold in abeyance and requested that briefing proceed on all other issues."). That relief was granted. Order at 1-2 (Oct. 16, 2013) (Doc. 1461576).

The same approach is warranted here. The Court should sever and hold in abeyance the UPL Record Issues, with instructions to address these issues in the rulemaking that will be conducted to address the UPL Standards. Petitioners note that, because EPA already has conceded that further rulemaking is needed to address the UPL Standards, addressing the UPL Record Issues in that rulemaking will not require any further proceedings not already proposed in EPA's own Remand Motion.

Briefing on all other issues should proceed on the already established briefing schedule.

## IV. EPA's Motion to Suspend Briefing Pending Decision on EPA's Remand Motion Should Be Denied.

For all the reasons identified above, Petitioners request that briefing proceed on all non-UPL issues according to the current briefing schedule in order to provide enhanced regulatory certainty, allow more efficient compliance planning, and prevent wasteful expense of resources. EPA's Briefing Suspension Motion, which would (if granted) stay the briefing of all issues pending this Court's decision on the Remand Motion, should therefore be denied.

Because issues related to the UPL Standards and the UPL Record Issues would no longer be part of this litigation if Petitioners' requested relief is granted, there is no basis for delaying briefing on all other issues.

****************

WHEREFORE, with regard to EPA's Remand Motion, Petitioners respectfully and affirmatively request vacatur of the UPL Standards and, therefore, oppose EPA's requested remand of the standards without vacatur. Moreover, Petitioners oppose stay of briefing pending EPA's further action to address the UPL Record Issues. Petitioners instead request that the Court sever and hold in abeyance the UPL Record Issues, with instruction for EPA to address these issues in the rulemaking that it will conduct to address the UPL Standards. The parties also respectfully request that the Court deny EPA's Briefing Suspension Motion.

Dated: March 13, 2014

Respectfully submitted,

/s/ Timothy S. Bishop
Timothy S. Bishop
Kevin G. Desharnais
Chad M. Clamage
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL  60606
(312) 782-0600

*Counsel for United States Sugar Corporation*

/s/ William L. Wehrum, Jr.
William L. Wehrum, Jr.
Hunton & Williams LLP
2200 Pennsylvania Ave., NW
Washington, DC  20037
(202) 955-1637
wwehrum@hunton.com

*Counsel for American Forest & Paper Association, American Wood Council, Biomass Power Association, National Oilseed Processors Association, Rubber Manufacturers Association, and*

*Southeastern Lumber Manufacturers Association*

/s/ David M. Friedland
David M. Friedland
U.S. Court of Appeals, D.C. Circuit Bar No.: 40270
Beveridge & Diamond, P.C.
1350 I Street NW, Suite 700
Washington, DC 20005
(202) 789-6000

*Counsel for the American Chemistry Council*

*Of Counsel:*

| | |
|---|---|
| Jan Poling | Linda E. Kelly |
| Vice President, General Counsel & Corporate Secretary | Quentin Riegel |
| | Patrick Forrest |
| American Forest & Paper Association | National Association of Manufacturers |
| 1101 K Street, NW | 733 10th Street, NW |
| Suite 700 | Suite 700 |
| Washington, DC 20005 | Washington, DC 20001 |
| (202) 463-2590 | (202) 637-3000 |

Leslie A. Hulse
Assistant General Counsel
American Chemistry Council
700 2nd Street, NE
Washington, DC 20002-4308
(202) 249-6131 (phone)
(202) 478-2583 (fax)

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Circuit Rule 25(c), I hereby certify that on this 13th day of March 2014, I caused the foregoing Opposition to Remedy Requested in EPA's Two Motions Addressing Inadequacies with EPA's Rulemaking Methodology and Motion for Affirmative Relief to be served on all ECF-registered counsel.

/s/ William L. Wehrum, Jr.